IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-00856-RPM

BLUMEDIA INC., a Colorado Corporation,
a/k/a Intense Cash
d/b/a BrokeStraightBoys.com and
d/b/a BrokeStraightGuys.com;

       Plaintiff,

v.

SORDID ONES BV dba GAYGRAVY.com and
DeeCash dba TripleXCash and dba TripleXCash.com
And dba MitZasInc.com and dba DeeDevelopments.com
dba ADULTDEVELOPMENTS.com and
dba STUDPAY.com and
JOHN DOES 1-20, JANE DOES 1-20, and
XYZ Companies 1-20

       Defendants.

---

## BRIEF IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

---

COMES NOW, Plaintiff BluMedia, Inc. ("Plaintiff"), by and through its counsel, Chad L.

Belville, and respectfully requests that this Court enter Default Judgment against Defendants

SORDID ONES BV dba GAYGRAVY.com and DEECASH dba TRIPLEXCASH and dba

TRIPLEXCASH.COM and dba MITZASINC.COM and dba DEEDEVELOPMENTS.COM dba

ADULTDEVELOPMENTS.com and dba STUDPAY.com.  Plaintiff seeks damages, attorney

fees, costs, award of domain names, and injunctive relief.  In support of its motion, Plaintiff

provides the attached Brief, Declaration and Attachments.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ 3

I.   PROCEDURAL CONSIDERATIONS ................................................................. 5

   A.   The Court has Jurisdiction over the Subject Matter and the Defendants ............................ 5

   B.   Plaintiff Effected Service of Process on Defendants Pursuant to Fed.R.Civ.P. 4(h) ........... 5

   C.   The facts of the Record Show That a Default Judgment is Warranted ............................... 6

   D.   Judgment by Default should be Entered, As Defendants have admitted Plaintiff's
   Allegations and Requests for Relief ............................................................................. 7

II.   Defendants Infringed on  Plaintiff's Trade Dress, Trademarks and Goodwill for
Commercial Gain, And Plaintiff is Entitled to Judgment Under the Lanham Act ........................ 8

III.   Defendants' use of the domain site "Broke Ass Boys" violates the Anti-Cybersquatting
Protection Act (ACPA), 15 U.S.C. § 1125(d), and the Court Should Award Statutory Damages 20

IV.   Defendants Violated the Colorado Consumer Protection Act ........................................... 22

V.   Damages ..................................................................................................... 23

VI.   Request for Relief ........................................................................................ 23

TABLE OF AUTHORITIES

*Cases*

*Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1241 (10th Cir. 2006)…………………..19

*Autoskill Inc. v. National Educ. Support Syst*., 994 F.2d 1476, 1499 (10th Cir.1993)……...18

*Brodeur v. American Home Assur. Co*., 169 P.3d 139, 155 (Colo.2007)…………………..23

*Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 525 (10th Cir.1987)      …………..18, 19

*Cleary Bldg. Corp. v. David A. Dame, Inc.*, 674 F. Supp. 2d 1257, 1270 (D. Colo. 2009)   23

*Eastman Kodak Co. v. Southern Photo Materials Co.,* 273 U.S. 359, 379, 47 S.Ct. 400, 405, 71 L.Ed. 684 (1927)      ………………………………………………………………………19

*Fisher v. Oklahoma Health Care Auth.,* 335 F.3d 1175, 1180 (10th Cir.2003)      ……………16

*Harris Research, Inc. v. Lydon*, 505 F. Supp. 2d 1161, 1168 (D. Utah 2007)      ………...17, 18

*Heaton Distrib. Co. v. Union Tank Car Co.,* 387 F.2d 477 (8th Cir.1967)   …………………..8

*King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1093 (10th Cir. 1999). ………………………………………………………………………………………..8

*Metro Brokers, Inc. v. Tann*, 815 F. Supp. 377, 383 (D. Colo. 1993)      ……………..17, 18

*Olcott v. Del. Flood Co*., 327 F.3d 1115, 1125 (10th Cir.2003)      …………………………….7

*Paco Rabanne v. Norco Enterprises, Inc.*, 680 F.2d 891, 894 (2d Cir.1982)……………………17

*Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 977 (10th Cir. 2002)      ……………..9

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) ……………………………………………………………………………………..9

*Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008)      ……………………………………………………………………….8, 20, 22

*VIP Foods, Inc. v. Vulcan Pet, Inc.*, 675 F.2d 1106 (10th Cir. 1982)………..……………….20

*Statutes*

15 U.S.C. § 1116 ……………………………………………………………..16

15 U.S.C. § 1117 ……………………………………………………………20, 22

15 U.S.C. § 1121 ……………………………………………………………….5

15 U.S.C. § 1125(a)(1)…………………………………………………………8, 9, 16

28 U.S.C. § 1331 …………………………………………………………………5

28 U.S.C. § 1332 …………………………………………………………………5

28 U.S.C. § 1338 …………………………………………………………………5

28 U.S.C. § 1391 …………………………………………………………………5

28 U.S.C. §1400 …………………………………………………………………5

Anti-Cybersquatting Protection Act (ACPA), 15 U.S.C. § 1125(d) ………………………20, 22

Consumer Protection Act ("CCPA"), Colo.Rev.Stat. § 6-1-105 …………………………..22

*Rules*

**Fed.R.Civ.P. 4(h)** …………………………………………………………………5

Fed.R.Civ.P. 55 …………………………………………………………………7

**PROCEDURAL CONSIDERATIONS**

**The Court has Jurisdiction over the Subject Matter and the Defendants**

1.  This Court has subject matter jurisdiction pursuant to the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. § 1331 (federal question) and 1332 (as the amount in controversy exceeds $75,000) and 28 U.S.C. § 1338.

2.  This Court has personal jurisdiction over the Defendants pursuant to 28 U.S.C. §§ 1391(b), (c), and/or (d).  Further, this Court has personal jurisdiction over the Defendants as they have engaged, and continue to engage, in business activities in and directed to this district, and have committed tortious acts within this district or directed at this district.

3.  Sordid Ones BV is the registered owner of the domain name www.gaygravy.com operated and commonly known as GayGravy.  *See* Attachment 3 showing registered domain owner as of October 16, 2011.

4.  Plaintiff is duly organized in the State of Iowa.  Defendant is subject to jurisdiction in Iowa, as the harm of copyright infringement is directed at the copyright owner, causing harm in the Plaintiff's jurisdiction and subjecting a defendant to jurisdiction.

5.  Venue is proper in this Court pursuant to 28 U.S.C. §§1391(b), (c) and (d); and 28 U.S.C. §1400(a).

**Plaintiff Effected Service of Process on Defendants Pursuant to Fed. R. Civ. P. 4(h)**

6.  Service on defendants was made pursuant to Order Allowing Motion for Alternate Service on August 7, 2011 *See* ECF Documents 6 and 7.

7.  Defendant has been served via email at the email address of the registered owner of the domain www.GayGravy.com.  *See* Attachment 3 showing registered owner of the domain GayGravy. Attorney Matt Collins, who has claimed to represent Defendant, has also been

served the Summons, Complaint, and Order Allowing Alternate Service of Summons.
See Declaration of Chad Belville.

**The facts of the Record Show That a Default Judgment is Warranted**

8.  Plaintiff BluMedia Inc. (hereinafter "Plaintiff") initiated this action against Sordid Ones BV dba GayGravy.com and DeeCash dba TripleXCash and dba TripleXCash.com and dba MitZasInc.com and dba DeeDevelopments.com dba AdultDevelopments.com and dba StudPay.com on April 1, 2011, seeking damages and injunctive relief for claims of trade dress and terms infringement, trademark infringement, Unfair Competition under Colorado and federal law, and deceptive trade practices under Colorado Law. *See* ECF Document 1.

9.  On August 4, 2011, this Court entered an Order Allowing Alternate Service of Summons and Complaint. ECF Document 6. Service according to this Order was made upon the Defendants Sordid Ones BV dba Gaygravy.com, and DeeCash dba TripleXCash and dba TripleXCash.com and dba MitZasInc.com and DeeDevelopments.com AdultDevelopments.com and StudPay.com via email at of the registered owner of the domain www.GayGravy.com, officers of the company doing business as GayGravy, and upon an attorney who held himself out as representing the Defendant, specifically on the following email addresses as ordered by the court: matt@mpcollins.com; Jason@sobvsites.com; Terrence@deedevelopments.com; Nick@TripleXCash.com; Nick@GayGravy.com; Richard@DeeCash.com; Richard@MitZasInc.com. *See* ECF Document 7.

10. Although Defendants were served and aware of this action, Defendants nonetheless did not answer or file any responsive pleading to the Complaint. As Defendants were served

yet failed to file an answer or responsive pleading, Plaintiff sought the Clerk's Entry of

Default, of which a copy was also sent to the same email addresses as the Summons and

Complaint.

11.     The Clerk entered Default September 2, 2011.  *See* ECF Document 9.

12.     More than six weeks has passed since the Clerk's Entry of Default was filed.  A Court

Order entering default judgment against Defendants is now proper pursuant to Fed. R.

Civ. P. 55.

**Judgment by Default should be Entered, As Defendants have admitted Plaintiff's Allegations and Requests for Relief**

13.     This Motion for Default Judgment is based on the allegations of the Complaint (ECF

Document 1). Once default was entered, Defendants were deemed to have admitted

plaintiffs' well-pleaded allegations of fact. Olcott v. Del. Flood Co., 327 F.3d 1115, 1125

(10th Cir.2003). This Motion also relies on the facts attested to by the Declaration of

Chuck Angermann, Attachment 4 (hereinafter "Angermann Dec.") filed in support hereof

and additional exhibits filed in support hereof.  Those materials are sufficient to justify

the requested relief.

**Defendants Infringed on Plaintiff's Trade Dress, Trademarks and Goodwill for Commercial Gain, And Plaintiff is Entitled to Judgment Under the Lanham Act**

          <u>Proof of Infringement</u>

14.     Trademark infringement is a type of unfair competition; the two claims have virtually

identical elements and are properly addressed together as an action brought under section

43 of the Lanham Act. "Trademark infringement is but part of broader law of unfair

competition; and facts supporting suit for infringement and one for unfair competition are

substantially identical." *Utah Lighthouse Ministry v. Found. for Apologetic Info. &*

*Research*, 527 F.3d 1045, 1050 (10th Cir. 2008), quoting *Heaton Distrib. Co. v. Union Tank Car Co.,* 387 F.2d 477 (8th Cir.1967).

15.    In order to prove a claim of Trademark infringement Plaintiff must show that the mark is protectable, that Defendants used the trademark "in connection with any goods or services" and Defendants' use "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." *Id*.; 15 U.S.C. § 1125(a)(1).

16.    The stronger and more distinctive a trademark, the greater the entitlement to protection. There are five categories of marks from lowest to highest strength: generic, descriptive, suggestive, arbitrary, and fanciful. *Id*. at 1051-52. The category into which a mark falls determines both its "eligibility for protection and the degree of protection accorded." *Id*. Suggestive marks are those that suggest some quality or ingredient of the goods. *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1093 (10th Cir. 1999).

17.    The trade dress of a product is its overall image and appearance, and may include features such as size, shape, color or color combinations, texture, graphics, and even particular sales techniques. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992); *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 977 (10th Cir. 2002). Under 15 U.S.C. § 1125(a)(1)(A), § 43(a) of the Lanham Act, a plaintiff has a cause of action against any person whose use of a word, symbol, or device is likely to cause confusion regarding the source or origin of the plaintiff's goods. *Id*.; 15 U.S.C. § 1125(a)(1)(A). Protection may extend to a single feature or a combination of features in a trade dress. In order to demonstrate trade dress infringement for product

packaging, the plaintiff must demonstrate (1) that its trade dress is inherently distinctive or has become distinctive through secondary meaning; and (2) likelihood of confusion. *Sally Beauty Supply v. Beautyco*, *supra*.

18.   A trade dress is inherently distinctive if its "intrinsic nature serves to identify a particular source." *Two Pesos*, 505 U.S. at 768, 112 S.Ct. 2753. Such trade dresses "almost automatically tell a customer that they refer to a brand and immediately signal a brand or a product source." Like trademarks, the inherent distinctiveness of a trade dress is categorized along the generic-descriptive-suggestive-arbitrary-fanciful spectrum. *Sally Beauty Supply v. Beautyco*, *supra*. A trade dress which is not inherently distinctive, however, may acquire distinctiveness through secondary meaning. *Id*. In other words, over time customers may associate the primary significance of a dress feature with the source of the product rather than the product itself. When a trade dress has become distinctive of a product's source, courts have permitted protection under § 43(a) of the Lanham Act. *See Two Pesos*, 505 U.S. at 769, 112 S.Ct. 2753

19.   Using the websites BrokeStraightBoys.com and BrokeStraightGuys.com, Plaintiff markets its adult memberships to the website www.BrokeStraightBoys.com primarily to adult gay men seeking gay adult entertainment and particularly sexual videos displaying young adult men who are heterosexual being enticed to perform sexually with other men on camera for money. ECF Document 1, ¶ 5; Declaration of Chuck Angermann ("Angermann Dec.") ¶6-7.

20.   Broke Straight Boys has sold and marketed its goods and services utilizing inherently distinctive trade dress and trade marks since June 28, 2005. ECF Document 1, ¶ 17.

21.   As a result of Broke Straight Boys extensive sales and marketing featuring its distinctive trade dress and trademark terms "broke straight boys" and "broke straight guys" Plaintiff has enjoyed significant consumer recognition of its trade dress and terms "broke straight boys."  Broke Straight Boys has been the subject of numerous trade magazine and Internet review articles, including, for example, Cybersocket, RabbitsReviews, GayDemon, and JustUsBoys reviews of its websites.  ECF Document 1, ¶ 32; Angermann Dec. ¶ 6-7; Representative examples of such articles are attached as Exhibit 12 to ECF Document 1.

22.   Plaintiff has developed this distinctive trade dress and trademarks by spending hundreds of thousands of dollars per year in marketing its websites; nearly all of it incorporating distinctive trade dress and always including the trademark terms "broke straight boys" and "broke straight guys" (hereinafter simply "broke straight boys").  Plaintiff has marketed its products in a variety of ways, utilizing Internet marketing and through more traditional marketing methods, including (see ECF Document 1, ¶¶ 18-31; Angermann Dec. ¶ 6-7):

a.   Expending over $250,000 purchasing search terms through Google Adwords™ so that when a consumer searches for "broke straight boys" or "broke straight guys" on a Google search, Plaintiff's website link will be shown in the consumer's results page.

b.   Expending significant sums on programming efforts in a process called Search Engine Optimization. When a consumer searches the words "broke straight boys" the search engine will return web pages that include the terms "broke straight boys" extensively throughout the website. Plaintiff incorporates the terms "broke

& straight & boys & guys" throughout its websites, so such searches result in showing Plaintiff's website BrokeStraightBoys.com at the top of the list of search results.

c.  Print advertising in "mainstream" magazines such as Genre, in targeted magazines for adult consumers seeking adult entertainment, including Unzipped and Freshmen, in freely distributed publications that are directed toward potential Affiliates, such as Cybersocket Magazine, in freely distributed publications that are directed toward potential Surfers, such as Just Us Boys magazine, and in print advertising in foreign magazines, such as DNA which is primarily distributed in Australia.  A representative sample is attached as Exhibits 3-7 to ECF Document 1.

d.  Sponsoring and hosting "Broke Straight Boys" nights at bars and nightclubs throughout the United States, where representative models appear shirtless at the various clubs, signing autographs, dancing, and distributing promotional materials. A representative sample of flyers distributed to announce a Broke Straight Boys club appearance is attached as Exhibit 8 to ECF Document 1.

e.  Sponsoring or hosting "Broke Straight Boys" nights at events and nightclubs in Europe, including events in London, Madrid, and Barcelona. A representative sample of advertising for an event in Europe is attached as Exhibit 9 to ECF Document 1.

f.  Radio advertising.

g. Affiliate marketing through an extensive program of sponsoring and hosting events at webmaster conferences and Internet trade shows. A representative sample of trade show advertising is attached as Exhibit 10 to ECF Document 1.

h. Presences in social media sites such as MySpace, FaceBook and Twitter.  A representative sample is attached as Exhibit 11 to ECF Document 1.

i. Booths at various Gay Pride events, including Denver, Phoenix, Los Angeles, South Carolina, Pittsburg, Chicago, and St. Louis, where Broke Straight Boys representatives give away branded T-shirts, temporary tattoos, and other branded merchandise.

23. Broke Straight Boys has developed substantial and significant consumer recognition, trust, loyalty, and goodwill to it Broke Straight Boys trade dress and terms "broke straight boys". ECF Document 1, ¶ 34; Angermann Dec. ¶ 6-7.

24. Plaintiff operates its website, BrokeStraightBoys.com for profit by offering potential consumers a three (3)-day trial membership for $1.00 which will convert to a regular membership unless the consumer opts out. Many advertisements for Broke Straight Boys include references to this $1.00 Trial and consumers look for the $1.00 trial when they visit Broke Straight Boys website.

25. Plaintiff has established, in National Arbitration Forum (NAF) decisions 999667, 1235329, 1260258, and 1262183, common law rights in the name BrokeStraightBoys sufficient to take similar domains from other domain owners. Representative samples of NAF decisions, showing that Broke Straight Boys has established rights to the terms and award of the domains are attached as Exhibit  14 to ECF Document 1; ECF Document 1 ¶ 36; Angermann Dec. ¶ 6-7.

26.     Broke Straight Boys has acquired strong common law rights in and to the Broke Straight Boys trade dress and terms "broke straight boys" based on its continuous, uninterrupted and widespread use of its Broke Straight Boys trade dress and terms in commerce in connection with the advertising, marketing and sales of its products. ECF Document 1, ¶ 38; Angermann Dec. ¶ 6-7.

27.     In addition to common law rights, Broke Straight Boys is the effective owner of Colorado Trade Mark 20091215689, registered April 15, 2009 for the terms "broke straight boys" (Colorado registration).  The Colorado registration is valid, subsisting and incontestable. The Colorado registration constitutes prima facie evidence of Broke Straight Boys ownership rights in and to the Broke Straight Boys terms and also evidences Broke Straight Boys' exclusive right to use the Broke Straight Boys terms in commerce.  Copies of the Colorado Trademark Certificates are attached as Exhibit 14 to ECF Document 1; ECF Document 1, ¶ 36; Angermann Dec. ¶ 6-7.

28.     Defendants have used Plaintiff's Broke Straight Boys Trade Dress and Trademark terms in its domains listed in paragraph 41 of the Complaint. Defendants infringed on Plaintiff's trade dress and trademarks by creating sales across domains which are upsold from the infringing sites or upsold to the infringing sites, creating a tangled web of interacting web domains that contribute to intentionally confusing the consumer who relates Defendant's websites with Plaintiff's product. ECF Document 1, ¶ 41, Angermann Dec. ¶ 6-7.

29.     Defendants are incorporating the terms "broke straight boys" into its Search Engine Optimization efforts so that consumer searches for "Broke Straight Boys" result in Defendant's websites coming at the top of search requests.

30.    Defendants websites are operated as paid membership websites. The marketing mimics Plaintiff's website membership by making the identical offer of $1.00 trial membership followed by recurring regular membership. As a direct and proximate result of the conduct of Defendant, consumers have entered into membership subscriptions with Defendant that they otherwise would have entered into with Plaintiff if not for Defendant's misleading marketing. ECF Document 1, ¶¶ 40, 54, 95.

31.    As a result, Defendant has used Plaintiff's trade dress and trademarks in connection with goods or services and for commercial benefit.

32.    Defendants had prior knowledge of Broke Straight Boys trade dress and terms as Defendant signed up as an Affiliate of Broke Straight Boys before 08/01/2006 and have sent Internet traffic to Broke Straight Boys.  Defendant should be presumed to know of Broke Straight Boys trade dress, terms, products, and target market if Defendant signed up as an Affiliate of Broke Straight Boys and have sent Internet traffic to Broke Straight Boys.  An Affiliate should be presumed to be aware of the product, trade dress, and terms of a product it promotes.  An Affiliate would not send Internet traffic to a website without knowledge of the product available on that website. ECF Document 1, ¶ 50; Angermann Dec. ¶ 6-7.

33.    Defendants' use of the infringing trade dress and terms are intentional acts specifically to confuse relevant consumers and illegally benefit from Plaintiff's brand recognition.  ECF Document 1, ¶ 40, Angermann Dec. ¶ 6-7.

34.    Defendants' use of Plaintiff's trade dress and trade mark is likely to, and in fact has, caused confusion and mistake and is likely to or will deceive consumers as to the affiliation or connection of Defendants' websites to Plaintiff's commercial activities.

35.   Defendants chose to use the Broke Straight Boys trade dress and terms in order to identify themselves and/or associate themselves with Broke Straight Boys, to confuse and more easily reach Broke Straight Boys customers, penetrate Broke Straight Boys' market, and otherwise usurp Broke Straight Boys goodwill. ECF Document 1, ¶ 45.

36.   Plaintiff has received customer service complaints from Gay Gravy customers who purchased products from GayGravy.com, mistakenly believing them to be BluMedia Inc. (BrokeStraightBoys) products.  These complaints demonstrate that potential customers of Plaintiff are confused by Defendants' offerings because of their use of Plaintiff's trade dress and trademarks and purchase those products believing those products are the high quality products of BluMedia Inc.

37.   Defendants adopted and continue to use infringing trade dress and terms with full knowledge of Broke Straight Boys' superior legal rights but without Broke Straight Boys' authorization.  Defendants' tortuous acts constitute willful and deliberate infringement of Broke Straight Boys' common law trademark and trade dress rights and are in willful and wanton disregard of Broke Straight Boys' established and superior rights. ECF Document 1, ¶ 60.

38.   Defendants have acted in willful and wanton disregard of Broke Straight Boys' rights and willfully intended to trade upon Broke Straight Boys' reputation.  Defendants willfully and intentionally disregarded a civil claim from this Court to continue business as usual without regard of Plaintiff's intellectual property claims.  ECF Document 1, ¶ 52; Angermann Dec. ¶ 6-7.

39.   As a result, Plaintiff is entitled to judgment against Defendants for infringement of Plaintiff's trade dress and trademarks and for unfair competition by Defendants.

**Right to an Injunction**

40.     Under the Lanham Act, Courts have the power "to grant injunctions, according to the

principles of equity and upon such terms as the court may deem reasonable, … to prevent

a violation under subsection (a), (c), or (d) of section 1125 of this title.

41.     To show it is entitled to a permanent injunction, Plaintiff must show (1) actual success on

merits; (2) irreparable harm unless injunction is issued; (3) the threatened injury

outweighs the harm that the injunction may cause to the opposing party; and (4) the

permanent injunction, if issued, will not adversely affect the public interest. *Fisher v.*

*Oklahoma Health Care Auth.,* 335 F.3d 1175, 1180 (10th Cir.2003).

42.     (1) Actual Success: The foregoing demonstrates actual success on the merits. In addition,

Defendants have admitted all allegations of the Complaint by failing to answer.

43.     (2) Irreparable Harm: Courts will find that a Plaintiff has met its burden of showing

irreparable injury if Plaintiff shows likelihood of confusion. Where a Plaintiff has

expended substantial amounts of time, money, and resources in establishing the

distinctive quality of its trade dress or trademark, and that it has developed recognition

and goodwill by continued use, then the Defendants' use of the Trademark creates a

substantial risk of irreparable harm. *Harris Research, Inc. v. Lydon*, 505 F. Supp. 2d

1161, 1168 (D. Utah 2007). Where there is shown to be a high probability of confusion,

irreparable injury which cannot be fully compensable in damages tends to result. *Metro*

*Brokers, Inc. v. Tann*, 815 F. Supp. 377, 383 (D. Colo. 1993), citing *Paco Rabanne v.*

*Norco Enterprises, Inc.*, 680 F.2d 891, 894 (2d Cir.1982). Accordingly, the likelihood of

damage to reputation and good will entitles a plaintiff to relief. *Id*. Where there is a high

probability of confusion, irreparable injury which cannot be fully compensable in

damages tends to result. *Id*. Accordingly, the likelihood of damage to reputation and good will entitles a plaintiff to preliminary relief. *Id*.

44.     As Plaintiff has alleged in its complaint and demonstrated in this memorandum, actual confusion has resulted from Defendants' use of Plaintiff's trade dress and trademark. There is a high probability of continued confusion by Defendants' infringement. Plaintiff has poured hundreds of thousands of dollars into developing its distinctive trade dress and trademarks, developing good will and a positive reputation with customers, all as shown in the complaint and this memorandum. As a result, Plaintiff has demonstrated that it will be irreparably harmed by Defendants' continued infringement.

45.     (3) The threatened injury outweighs the harm that the injunction may cause to the opposing party: Where the Plaintiff will suffer harm to reputation and profits, and the infringing Defendant may do business under some other name or in some other manner, the threatened injury outweighs the harm. *Metro Brokers, Inc. v. Tann*, 815 F. Supp. 377, 383 (D. Colo. 1993). Here, Plaintiff is suffering harm to its reputation and losing profits. Defendants can do business under another name with other types of products without infringing on Plaintiff's trade dress and trademark.

46.     (4) The permanent injunction, if issued, will not adversely affect the public interest: Where the public has come to rely on a trade name or trade dress identify a product as being of quality, then the public has an interest in protecting the trade dress and tradename, and the public interest will be served by enjoining Defendants' infringement. *Metro Brokers, Inc. v. Tann*, 815 F. Supp. 377, 384 (D. Colo. 1993). Infringement and dilution of trademarks are inherently contrary to the public interest. *Harris Research, Inc. v. Lydon*, 505 F. Supp. 2d 1161, 1169 (D. Utah 2007), citing *Autoskill Inc. v. National*

*Educ. Support Syst.*, 994 F.2d 1476, 1499 (10th Cir.1993) ("In copyright cases, we think [the public interest] factor normally weighs in favor of the issuance of an injunction because the public interest is the interest in upholding copyrights protections."). These principles are applicable here, where consumers have come to rely on Plaintiff's trade dress and trademarks to assure specific types of quality products. The consumer's reliance on this and the public's interest in protecting trademarks satisfies this element.

47.     Plaintiff has met the requirements for entry of an injunction, and the Court should enter an injunction against Defendants as more specifically set forth below.

**Damages for Infringement of Trade Dress or Trademark**

48.     In order to recover damages on a Lanham Act claim, a "plaintiff must prove [that he or she] has been damaged by actual consumer confusion or deception resulting from the violation." *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 525 (10th Cir.1987). "Actual consumer confusion may be shown by direct evidence, a diversion of sales or direct testimony from the public, or by circumstantial evidence such as consumer surveys." *Id.* "Although the quantum of damages ... must be demonstrated with specificity, courts may engage in some degree of speculation in computing the amount of damages, particularly when the inability to compute them is attributable to the defendant's wrongdoing." *Id.* (quotation omitted); *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1241 (10th Cir. 2006).

49.     Plaintiff has received customer service complaints from Gay Gravy customers who purchased products from GayGravy.com, mistakenly believing them to be BluMedia Inc. (BrokeStraightBoys) products.  These complaints demonstrate that potential customers of Plaintiff are confused by Defendants' offerings because of their use of Plaintiff's trade

dress and trademarks and have purchased those products believing those products are the high quality products of BluMedia Inc. Angermann Dec. ¶ 6-7.

50. This proof of actual confusion among consumers shows entitlement to actual damages. *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 525 (10th Cir.1987).

51. Plaintiff will present evidence of damages at the hearing on its Motion for Default Judgment. Its evidence of the amount of damages may be circumstantial and inexact. *Id.* at 526, *citing  Eastman Kodak Co. v. Southern Photo Materials Co.,* 273 U.S. 359, 379, 47 S.Ct. 400, 405, 71 L.Ed. 684 (1927).

52. [I]n a case such as this, where the wrong is of such a nature as to preclude exact ascertainment of the amount of damages, plaintiff may recover upon a showing of the extent of the damages as a matter of just and reasonable inference, although the result may be only an approximation. *Id.* at 526.

53. Because trade infringement is a continuous wrong, Plaintiff is entitled to damages until the time the wrongful infringement ceases. *Id.*

### **Attorney's Fees**

54. Section 1117 of Title 15 of the United States Code states that, under the Lanham Act, "(t)he court in exceptional cases may award reasonable attorney fees to the prevailing party." (Emphasis added). In *VIP Foods, Inc. v. Vulcan Pet, Inc.*, 675 F.2d 1106 (10th Cir. 1982), the Court noted that the legislative history suggests that an "exceptional case" is one in which the trademark infringement can be characterized as "malicious," "fraudulent," "deliberate," or "willful." *Id.*, citing S.Rep.No.93-1400, 93rd Cong., 2d Sess., reprinted in (1974) U.S.Code Cong. & Ad.News 7132, 7133.

55.     Here, the Defendants infringed on Plaintiff's trade dress deliberately and willfully in an attempt to capitalize on Plaintiff's good reputation. Plaintiff's complaint clearly sets forth allegations of willful and deliberate infringement by Defendants, and those allegations are admitted. See ECF Document 1, ¶¶ 56, 60.

**Defendants' use of the domain site "Broke Ass Boys" violates the Anti-Cybersquatting Protection Act (ACPA), 15 U.S.C. § 1125(d), and the Court Should Award Statutory Damages**

56.     Congress enacted the Anti-Cybersquatting Protection Act (ACPA), 15 U.S.C. § 1125(d), to address acts of "cybersquatting," the deliberate, bad-faith, and abusive registration of Internet domain names in violation of the rights of trademark owners. *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1057 (10th Cir. 2008), citing S.Rep. No. 106-140, at 4 (1999). The ACPA provides for liability if a person registers, traffics in, or uses a domain name that is identical or confusingly similar to a distinctive mark, with a bad faith intent to profit from that mark. *Id.*; 15 U.S.C. § 1125(d)(1)(A).

57.     To prevail on the cybersquatting claim, Plaintiff must show (1) that its trademark, Broke Straight Boys, was distinctive at the time of registration of the domain name, (2) that the domain names registered by Defendants are identical or confusingly similar to the trademark, and (3) that Defendants used or registered the domain names with a bad faith intent to profit. *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1057 (10th Cir. 2008).

58.     Plaintiff BluMedia registered the domain brokestraightboys.com September 6, 2004. BluMedia registered brokestraightguys.com September 8, 2004.  BluMedia began marketing the membership website brokestraightboys.com June 28, 2005. BluMedia

utilized brokestraightguys.com as a companion website that capitalized on consumers errantly searching for broke straight guys even though the primary membership website is broke straight boys.  The registration information showing dates of registration are attached as Exhibit 1 to ECF Document 1, and incorporated by reference.

59.     Plaintiff has also established, through an ICANN arbitration proceeding its right to control the domains broke-straight-boys.com, broke-straight-guys.com, broke-ass-boys.com, broke-straight-boys.net, and brokestraightboy.net in National Arbitration Forum (NAF) decisions 999667, 1235329, 1260258, 1262183, 1280215 and 1321153 resulting in the transfer of twenty-four (24) domain names thus far.  These decisions also resulted in determinations that BluMedia had established common law rights in the name BrokeStraightBoys sufficient to take similar domains from other domain owners.  Representative samples of NAF decisions, showing that Broke Straight Boys has established rights to the terms and award of the domains are attached as Exhibit 14 to ECF Document 1.

60.     Defendants have marketed and sold website membership under the domains www.brokeassboys.com April 20, 2008 and www.realbrokeboys.com. Brokeassboys.com was created on April 20, 2008, and Realbrokeboys.com was created on November 18, 2008, well after the date that Plaintiff's websites were established in the market. See Attachments 1 and 2 attached hereto.

61.     Defendants' websites, like those that were transferred to Plaintiff in arbitration through ICANN, are deceptively similar to Plaintiff's websites and evoke the same image.

62.     Defendants have used "broke" and "boys" in the name of their websites with the intent of taking advantage of Broke Straight Boys trade dress, terms. Defendants even markets on

to consumer on these websites using identical offer of $1.00 trial membership followed by recurring regular membership, all without Broke Straight Boys authorization. Defendants have done so with the bad faith intent to profit by taking customers from Plaintiff. ECF Document 1, ¶¶ 40-42.

63. Plaintiff has thus proved that Defendants have violated the ACPCA, and Plaintiff is entitled to damages. 15 U.S.C. § 1117(d) provides that when a violation of the ACPA is established, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just.

64. Plaintiff requests that the Court enter the maximum amount of damages for each of the two domains Defendants have used that are deceptively similar to Plaintiff's domains.

**Defendants Violated the Colorado Consumer Protection Act**

65. To state a claim for relief under the Colorado Consumer Protection Act ("CCPA"), Colo.Rev.Stat. § 6-1-105, a plaintiff must plead facts sufficient to show that: (1) the defendant engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of the defendant's business, vocation, or occupation; (3) the challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) the plaintiff suffered injury in fact to a legally protected interest; and (5) the challenged practice caused the plaintiff's injury. *Brodeur v. American Home Assur. Co*., 169 P.3d 139, 155 (Colo.2007). *Cleary Bldg. Corp. v. David A. Dame, Inc.*, 674 F. Supp. 2d 1257, 1270 (D. Colo. 2009).

66.     The foregoing facts demonstrate that Defendants engaged in unfair and deceptive trade practices by the use of Plaintiff's established trade dress, trademarks and reputation, in the course of the operation for profit of Defendants' websites. Plaintiff has demonstrated that the practice impacted actual and potential consumers of Defendants' and Plaintiff's goods and services, and that Plaintiff has lost customers to Defendants as a result. Plaintiff is thus entitled to judgment against Defendants.

67.     Defendants' wrongful actions were committed with an intent to deceive the public and with willful and wanton disregard of the laws of the State of Colorado and Broke Straight Boys' superior rights. ECF Document 1, ¶ 75; Angermann Dec. ¶ 6-7.

**Damages**

68.     The Court should award damages as proven at hearing on this motion for judgment.

**Request for Relief**

69.     As demonstrated in the foregoing Memorandum in Support of Motion for Default Judgment and supporting evidence, the Court should find in favor of Plaintiff on its causes of action for violation by Defendants of Plaintiff's trade dress and tradenames, for violation of the Anti-Cybersquatting Protection Act and for violation of the Colorado Consumer Protection Act.

70.     The Court should enter default judgment against Defendants as follows:

a.    Damages in an amount to be proven at a hearing on the Motion for Default Judgment for violation of the Lanham act and infringement of Plaintiff's trade dress and tradenames;

b.    Permanent injunctive relief enjoining Defendants and their respective agents, servants, and employees, and any other persons or entities acting on their behalf from infringing upon any of the Plaintiff's trade dress or trademarks.

c.   An award of statutory damages in the amount of $100,000 for each of the two

domains with deceptively similar names.

d.   Injunctive relief awarding the transfer of the www.GayGravy.com,

brokeassboys.com and realbrokeboys.com domain names.

e.   Injunctive relief awarding transfer of the domain names listed in paragraph 41 of

the Complaint.

f.   Such other relief as the Court deems just and proper.


DATED:  June 25, 2013                    Respectfully submitted,

                                         By:


                                         /s/ Chad L. Belville
                                         Chad  Belville, Attorney at Law
                                         Iowa Bar # 015731


Physical Address                         837 Central Avenue
                                         Northwood, Iowa 50459


MAILING ADDRESS:                         P.O. Box 17879
                                         Phoenix, AZ 85066

                                         Telephone:  602-904-5485
                                         FAX:  602-297-6953
                                         E-mail cbelville@azbar.org

                                         ATTORNEY FOR PLAINTIFF